Whaley, Judge,
delivered the opinion:
The plaintiff brings this action to recover the cost and expenses of a shipment of potatoes to the Quartermaster at Fort Bragg, N. C., on the ground that the shipment was wrongfully rejected.
The plain tiff was awarded on May 14, 1929, after advertisement and bid, Purchase Order No. 768-29, Requisition No. 159-352-29, by the Quartermaster Corps of the War Department, for the delivery of a certain quantity of Irish potatoes at a certain specified price, to be delivered “as if called for on or before June 30, 1929.” The potatoes were to conform to the U. S. A. Quartermaster Corps Specification No. 22-119A. Circular Proposal No. 159-29-32, made a part of the order, provided inter alia that the deliveries would be subject to inspection at destination and that quantities listed were subject to increase or decrease not to exceed 25%.
The Quartermaster at Fort Bragg, on June 10, 1929, made a call upon the plaintiff for delivery of the potatoes at Fort Bragg. In compliance with this call the plaintiff shipped a carload of potatoes containing 200 sacks from Greenville, Michigan, to Fort Bragg, N. C. When the potatoes arrived at their destination the commissary officer of the Quartermaster Corps inspected the shipment and estimated that between 30% and 50% of the entire shipment had “hollow hearts” and rejected the shipment as not coming up to the specifications. When notified of this inspection and rejection, the Quartermaster at Fort Bragg made an inspection of the shipment and concurred in the rejection made by the commissary officer. The high percentage of “hollow hearts ” was the sole ground upon which these officers rejected the shipment. The plaintiff was immediately notified of the rejection and the ground upon which the rejection was made. On June 24, 1929, the Quartermaster began to purchase potatoes in the open market and charged the same to plaintiff’s account. The plaintiff also furnished an additional carload of potatoes to meet the requirements of the order. The total replacement by the plaintiff amounted to 44,375 lbs. for which the plaintiff paid the sum of $875.39, together with freight and handling charges. The plaintiff endeavored to dispose of the rejected carload of potatoes in and around *630 Fort Bragg but was unable to find a market and bad tbe car shipped to Washington, D. C., where it was afterwards disposed of for $198. The total cost to the plaintiff of the potatoes accepted and the potatoes which had been rejected, together with the freight and other charges, amounted to the sum of $1,763.25. Allowing for the $198 received by the plaintiff for the carload of rejected potatoes, plaintiff had a net outlay of $1,565.25.
The defendant has offered to pay for the potatoes delivered and accepted at the contract price, or the sum of $794.31. The plaintiff has refused to accept this amount and has brought suit to recover the entire cost of the rejected and the accepted potatoes, together with charges against its account.
When the car was brought to Washington, D. C., it was inspected by an agent of the Department of Agriculture and a certificate was issued by this inspector stating that the average percentage of “holiow hearts” was 5 per cent; that “other defects, chiefly scab,” averaged 2 per cent; and as to grade, that “stock meets quality requirements for U. S. Grade No. 1, decay and sprouting being factors of condition.”
The contract provided that the potatoes should conform with the Quartermaster Corps Specification No. 22-119A. The pertinent provisions of this specification are:
“No. 2. This specification covers the requirements of Irish potatoes which shall meet the grade requirements of U. S. Grade No. 1 ’ of the Department of Agriculture.
❖ H* * X *
“5. _ Shall _ consist of sound potatoes of round and long varieties which are mature, practically free from dirt or other foreign matter, frost injury, sunburn, second growth, growth cracks, cuts, scabs, blight, soft rot, dry rot, and damage caused by disease, insects, or mechanical or other means. * * *.”
The provision in “IT. S. Grade No. 1” of the Department of Agriculture corresponding to requirement 5 of the Army Specification is as follows:
“U. S._No. 1 shall consist of potatoes of similar varietal characteristics which are not badly misshapen, which are free from freezing injury and soft rot, and from damage caused by dirt or other foreign matter, sunburn, second growth, growth cracks, hollow heart, cuts, scab, blight, dry rot, disease, insects, or mechanical or other means.”
*631 And also—
“In order to allow for variations incident to proper grading and handling, not more than 5 per cent, by weight, of any lot may be below the prescribed size. In addition, not more then 5 per cent, by weight, may be damaged by hollow heart, and not more than 6 per cent may be below the remaining requirements of this grade; but not to exceed one-sixth of this amount, or 1 per cent, shall be allowed for potatoes affected by soft rot.” (Italics ours.)
The corresponding provision of No. 22-119A is:
“In order to allow for variations incident to proper grading and handling, not more than 5 per cent, by weight, of any lot may be below the prescribed size, and, in addition, not more than 6 per cent, by weight, may be below the remaining requirements of this grade, but not to exceed one-third of the 6 per cent tolerance shall be allowed for potatoes affected by soft rot.”
From a casual glance it clearly appears that there is no provision in the requirements of the U. S. A. Quartermaster Specification No. 22-119A in reference to “hollow hearts” but as U. S. Grade No. 1 was made a part of the contract and this grade distinctly sets out the percentage of “hollow hearts” to be “not more than five per cent, by weight, may be damaged by hollow hearts” this percentage would be controlling.
The record is silent as to tbe nature and extent of the inspection made by the commissary officers at Fort Bragg, the testimony of these officers not having been taken; but, the inspection made by the agent of the Department of Agriculture, after the rejected car reached Washington, D. C., shows that the carload of potatoes met the requirements as specified in U. S. Grade No. 1 and the average percentage of “hollow hearts” was 5 per cent.
The fact that the difference in the percentage of “hollow hearts” as found by the inspector of the Department of Agriculture and the officers of the commissary department at Fort Bragg is so great, and the failure to take the testimony of these officers, justify the presumption that the inspection made upon the arrival of the carload of potatoes at Fort Bragg must have been loosely and haphazardly performed. The Government does not dispute the correctness and accuracy of the inspection made by the agent of the *632 Agriculture Department, but, on tbe contrary, after suit was commenced, sets up the defense that the 5 per cent of “hollow hearts” combined with the 2 per cent of “scabs” give a percentage of 7, which is outside of the tolerance of the 6 per cent called for under the requirements of U. S. Grade No. 1. The potatoes were not rejected on the ground that there was a percentage of “scabs” but solely on the ground that the high percentage of “hollow hearts” was beyond the 5 per cent called for under the requirements of U. S. Grade No. 1.
Admitting for the sake of the argument such a defense can now be set up, it is quite apparent that it is not tenable, for the tolerance permitted in U. S. Grade No. 1, after allowing variations for size, expressly adds “not more than 5 per cent by weight, may be damaged by hollow heart, and not more than 6 per cent may be below the remaining requirements of this grade * * *. ” So, also, the requirements of Army Specification No. 22-119A provide this 5 per cent by weight, in which hollow hearts fall, “and in addition not more than 6 per cent by weight may be below the remaining requirements, etc.” The conjunctive word “and” is used in both provisions and clearly means the two percentages are to be combined so as to permit of an 11 per cent tolerance. The allowance in the contract of 5 per cent for damages caused by hollow heart is separate from, and in addition to, the 6 per cent tolerance allowed for damage from other causes.
The facts in this case clearly show that the officers at Fort Bragg were not justified in rejecting the carload of potatoes because of its failure to comply with the specifications as called for in the contract to purchase. The evidence clearly shows that the carload did not contain “hollow-heart” potatoes in an amount greater than 5 per cent. The rejection of the shipment of potatoes was wrongful and the plaintiff is entitled to recover the cost and expenses occasioned by the wrongful act of the officers of the Government.
Ordinarily the plaintiff would not be entitled to recover the cost of bringing the car from Fort Bragg to Washington, as under ordinary conditions the inspection should have been made at point of delivery, but the plaintiff could not dispose of the potatoes in and around Fort Bragg and *633 therefore sought the nearest favorable market, and the nearest favorable market under the circumstances was the one to which the car was shipped and where the second inspection was made by an agent of the Government. Under these circumstances, it is our opinion that the plaintiff is entitled to recover the entire cost and expenses occasioned it by the erroneous action of the officers of the Government.
The plaintiff is entitled to recover the sum of $1,565.25. It is so ordered.
Williams, Judge; Littleton, Judge; Gbeen, Judge; and Booth, Chief Justice, concur.